511 So.2d 1268 (1987)
James E. DEMERY, Plaintiff-Appellee,
v.
D.R. DUPREE, d/b/a Dupree Trucking, et al., Defendants-Appellants.
No. 18852-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
Writ Denied November 13, 1987.
*1269 Kelly & Salim by Robert L. Salim, Natchitoches, for plaintiff-appellee.
Culpepper, Teat, Caldwell & Avery by James D. Caldwell, Jonesboro, for defendants-appellants.
Before HALL, C.J., and JASPER E. JONES and FRED W. JONES, JR., JJ.
HALL, Chief Judge.
From a judgment in favor of plaintiff awarding worker's compensation benefits, penalties and attorney's fees, the defendant statutory employer, Paul Shaw, Inc., and its insurer, Protective Casualty Insurance Company, appealed, raising issues of peremption and prematurity, statutory employer relationship, entitlement to penalties and attorney's fees, entitlement to travel expenses, and duration of disability. For reasons set forth in this opinion, we amend to delete the award of penalties and attorney's fees against the employer, and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Donald R. Dupree operated D.R. Dupree Trucking Company as a sole proprietorship to perform contract hauling and logging jobs. Plaintiff was employed by Dupree as a truck driver on a logging crew. Paul Shaw, Inc. operated as a timber dealer with Billy Shaw as its president and sole stockholder. Paul Shaw, Inc., who had a contract to furnish wood to International Paper Company, had purchased merchantable timber from Mike Weaver and entered into an agreement with Dupree to cut and haul timber from the Weaver tract to the International Paper mill in Coushatta. At the time of the accident giving rise to this litigation, Dupree was not doing logging work for anyone other than Paul Shaw, Inc.
On Thursday, January 17,1985, Dupree's logging crew, including plaintiff as a truck driver, began work on the Weaver tract. On that day, plaintiff transported skidders to the Weaver tract on a lowboy hooked to one of Dupree's trucks. After unloading the skidders, plaintiff returned the truck with the lowboy still attached to Dupree's yard in Coushatta. On Friday, plaintiff drove another Dupree truck with a pole trailer to the Weaver tract where he loaded it with logs before taking it to the International *1270 Paper mill later that same day. This same trailer was again loaded with logs on Friday but was not taken to the mill. On Saturday, plaintiff and others went to Dupree's yard to prepare to go to work on the Weaver tract. Plaintiff unhooked the lowboy from the truck that he had driven on Thursday and was in the process of hooking up a log trailer to the same truck when the landing gear on the trailer fell and struck his leg, resulting in a displaced fracture of plaintiff's left distal tibia or shin bone.
The accident was reported to Billy Shaw of Paul Shaw, Inc. who notified Protective Casualty of the claim. After investigation, the insurer refused to pay compensation benefits.
On April 2, 1985, plaintiff filed a claim for compensation with the Office of Worker's Compensation Administration (OWCA) listing Billy Shaw, International Paper Company and Donald Dupree as his employers and Protective Casualty as the insurer. On July 9, 1985 a certificate was issued by OWCA stating that a recommendation had been issued, that the parties listed had received the recommendation of the office and none had rejected it, and therefore they were conclusively presumed to have accepted the recommendation as provided in LSA-R.S. 23:1310.1. Only the plaintiff, his attorney and Dupree were listed on the certificate as parties. The record does not disclose the content of the OWCA's recommendation.
On August 26, 1985 plaintiff filed this suit for worker's compensation benefits against Donald R. Dupree, d/b/a D.R. Dupree Trucking Company, Billy Shaw and International Paper Co., attaching to his petition copies of the claim filed with OWCA and the OWCA certificate. Plaintiff later amended his petition to add Paul Shaw, Inc. and its insurer Protective Casualty Insurance Company as defendants and dismissed his claim against Billy Shaw. Dupree asserted third party demands against Paul Shaw, Inc., Protective Casualty, International Paper Company, and Dobson Pulpwood, Inc. Dupree dismissed his claim against Dobson Pulpwood prior to trial. Exceptions of prematurity filed by Billy Shaw, International Paper Company, Paul Shaw, Inc. and Protective Casualty were overruled and the case went to trial. After plaintiff rested his case, the trial court granted International Paper Company's motion for a directed verdict. After trial, the district court granted judgment in favor of plaintiff against Paul Shaw, Inc. and Protective Casualty for worker's compensation benefits in the amount of $248.00 per week for 42 weeks for a total of $10,416.00, plus medical expenses incurred together with travel expenses in the amount of 23 ¢ per mile, statutory penalties and attorney's fees in the amount of $4,500.00, together with legal interest thereon from date of judicial demand until paid. All claims against Dupree were denied. Paul Shaw, Inc. and Protective Casualty appealed, and filed an exception of peremption in this court.

ISSUES
Appellants, Paul Shaw, Inc. and Protective Casualty, raise the following issues on appeal:
1. Whether the exception of prematurity filed by appellants should have been sustained;
2. Whether plaintiff's failure to reject the OWCA's recommendation perempts his cause of action against appellants for compensation benefits;
3. Whether Paul Shaw, Inc. was plaintiff's statutory employer;
4. Whether Paul Shaw, Inc. was erroneously cast for penalties and attorney's fees along with its insurer;
5. Whether plaintiff failed to prove his travel expenses for medical treatment; and
6. Whether plaintiff was erroneously awarded benefits for a period of time following his release from treatment.

PREMATURITY
Appellants filed an exception of prematurity based on their lack of notice of the OWCA proceedings and plaintiff's noncompliance with LSA-R.S. 23:1310.1. The trial court denied the exceptions.
*1271 Plaintiff submitted a claim to OWCA listing Billy Shaw, International Paper and Donald Dupree as his employers and Protective Casualty as the insurer. OWCA issued a recommendation listing only Dupree as employer/party and then issued a certificate of no rejection. Plaintiff subsequently filed this suit.
It appears that plaintiff did all he was required to do in filing his claim with OWCA. Although Paul Shaw, Inc. was not listed in the claim, the corporation's president and sole stockholder was listed along with its insurer. If those parties did not receive notice of the claim, it was the fault of OWCA and not plaintiff. The recommendation of OWCA apparently did not deal with plaintiff's claim against Shaw and Protective Casualty and to this extent did not comply with OWCA's statutory duty to issue a recommendation on plaintiff's entire claim against all parties.
Plaintiff complied with LSA-R.S. 23:1310 in filing his claim with OWCA. Since the administrative agency issued no recommendation as to the claim against Paul Shaw, Inc. and Protective Casualty, there was nothing for plaintiff to accept or reject insofar as his claim against those parties is concerned. Although the appropriate action by the trial court on appellant's exception of prematurity might have been to remand to OWCA for determination and recommendation on plaintiff's entire claim, this was not done and the case has now been fully litigated in court. The accident happened more than two years ago. No useful purpose would be served by setting aside the district court judgment and requiring the parties to start over in the administrative process, further delaying a decision for a substantial period of time. See McConnell v. Givens Timber Co., Inc., 511 So.2d 1258 (La.App. 2d Cir.1987).

PREEMPTION
Appellants filed in this court a "peremptory exception" relying on Schulin v. Service Painting Co. of Louisiana, 479 So.2d 939 (La.App. 1st Cir.1985), writ denied, 481 So.2d 634 (La.1985). Appellants assert that because plaintiff failed to timely reject the OWCA's recommendation, he was conclusively presumed to have accepted the recommendation under LSA-R.S. 23:1310.1 and was thereby perempted from seeking review of the OWCA recommendation in the district court. As pointed out above in the discussion of the prematurity issue, there was no recommendation to reject insofar as the claim against appellants is concerned. Furthermore, the concept that a failure to reject a recommendation of OWCA perempts or destroys an employee's cause of action has been rejected by this court in Suttle v. Roadway Express, Inc., 511 So.2d 1262 (La.App. 2d Cir.1987), which followed the Third Circuit's analysis in Rich v. Geosource Wireline, Inc., 490 So.2d 1165 (La.App. 3d Cir.1986).

STATUTORY EMPLOYER
Appelants argue that the trial court erred in finding that Paul Shaw, Inc. was the statutory employer of plaintiff under the analysis set forth in Berry v. Halston Well Service, Inc. 488 So.2d 934 (La.1986), and based on insufficient proof of the contract between Dupree and Shaw under LSA-C.C. Art. 1846. The evidence clearly shows by Billy Shaw's own testimony that he agreed with Dupree that Paul Shaw, Inc. would provide worker's compensation insurance for Dupree's employees while they worked on the job for Paul Shaw, Inc. Thus, there is no merit to appellant's argument of insufficient proof under LSA-C.C. Art. 1846. Furthermore, the agreement between Dupree and Shaw regarding payment of worker's compensation insurance is a factor which can be considered in determining statutory employer status. See Godfrey v. John L. Vaccaro and Associates, 402 So.2d 195 (La.App. 1st Cir.1981).
It is well-settled that where a principal engaged in procuring timber products is actually paying for services in their processing, such as the cutting and hauling of timber in this case, the principal is a statutory employer of an employee of the contractor hired to perform those services. LSA-R.S. 23:1061; Bellard v. Tri-State Insurance Company, 282 So.2d 453 (La. 1973); Woodard v. Southern Casualty Insurance Company, 305 So.2d 528 (La. *1272 1974); Godfrey v. John L. Vaccaro and Associates, supra. Under these cases, Paul Shaw, Inc. is clearly the statutory employer of plaintiff.
The Berry case cited by appellants was a tort suit in which statutory employer status was raised as a defense under LSA-R.S. 23:1032 and 1061. Applying the analysis set forth in Berry to the facts before us in this worker's compensation case yields the same result as the prior jurisprudence.
Berry set forth the following three-part analysis:
1. Whether the scope of the contract work is specialized or non-specialized based on whether it requires a degree of skill, training, experience, education or equipment not normally held by those outside of the contract field;
2. Whether a comparison of the principal's trade, business or occupation and the contract work indicates that the contract work can be considered a part of the principal's trade, business or occupation; and
3. Whether the principal is engaged in the work at the time of the alleged accident.
If the contract work is determined to be specialized per se, then the work is not part of the principal's trade, business or occupation and the principal is not a statutory employer of the contractor's employees and the second and third steps of the analysis need not be undertaken.
Cutting and hauling timber is considered basically manual labor and is not a specialized field of the timber industry. It does not require special skill, training, experience, education or sophisticated equipment not normally possessed by members of the timber industry outside of the cutting and hauling field. A comparison of Paul Shaw, Inc.'s business and Dupree's business reveals that the cutting and hauling of timber is an integral part of the former's business and part of the obligation owed by it to International Paper. The fact that this work may frequently be contracted out, as evidenced by Paul Shaw, Inc.'s lack of equipment or employees necessary for the job, does not negate this relationship between the two businesses. LSA-R.S. 23:1061 was enacted to prevent principals who employ contractors to perform all or part of their trade, business or occupation from avoiding their worker's compensation obligation. Berry v. Halston Well Service, Inc., supra; 13 Malone and Johnson, La. Civil Law TreatiseWorkers Compensation § 121 (1980). Lastly, at the time of the accident Paul Shaw, Inc. was engaged in performing its obligation to procure timber and deliver it to the International Paper mill. We conclude that Paul Shaw, Inc. was the statutory employer for plaintiff.
Defendants further argue that plaintiff was not acting within the course and scope of his employment with Paul Shaw, Inc. when he was injured. Both plaintiff and Dupree testified that plaintiff was hooking up a log trailer to go to the Weaver tract and load it with logs to take to the mill on Monday. Additionally, both men testified that this was the only logging job that Dupree was engaged in at the time. However, Donald Hasley, employed by Dupree at the time of the accident but employed by Billy Shaw at the time of trial, testified that he was the only woodcutter working on the Weaver tract and when he left work Friday afternoon at approximately 3:00, there were no more logs to be loaded. The trial court apparently believed the testimony of plaintiff and Dupree rather than the testimony of Hasley. We find no abuse of the great discretion afforded the trial court in so doing. Based on this testimony, plaintiff was acting within the course and scope of his employment with Paul Shaw, Inc.

PENALTIES AND ATTORNEY'S FEES
Appellants argue that they were not arbitrary, capricious or without probable cause in withholding benefits from plaintiff; therefore, plaintiff is not entitled to receive penalties and attorney's fees under LSA-R.S. 23:1201 and 1201.2.
Shortly after the accident, Billy Shaw was notified of the plaintiff's injury and in turn notified Protective Casualty. Jay Tarver, *1273 employed by Protective Casualty as an adjustor at the time of the accident but unemployed at the time of the trial, testified that the only reason he refused to pay plaintiff worker's compensation benefits was because Dupree had informed him that he carried worker's compensation insurance. Barry Mitchell, who was the president of Southern General Agency, Protective Casualty's agent, testified that although Tarver actually handled plaintiff's claim, Mitchell himself made the determination not to pay worker's compensation benefits to plaintiff. This determination was made primarily because of Dupree's statement that he had worker's compensation insurance, but also because plaintiff was Dupree's employee, was working in Dupree's yard on a Saturday, and may have been about to haul something for someone else. Dupree did not actually have worker's compensation insurance in effect on the date of the accident.
Determination of whether an insured acted arbitrarily, capriciously or without probable cause in refusing to pay benefits is ultimately one of fact and trial court's finding should not be disturbed on appeal absent a showing of manifest error. Harrison v. Chicago Mill & Lumber Co., 446 So.2d 843 (La.App. 2d Cir.1984).
Failure to pay is not arbitrary, capricious or without probable cause when there existed a serious dispute as to liability. Schepp v. Olin Corporation, 445 So.2d 1280 (La.App. 3d Cir.1984), writ denied, 448 So.2d 117 (La.1984). However, a dispute between the statutory and regular employer as to which one owes compensation benefits is not a justifiable basis for withholding benefits from the injured employee. Guillot v. Guillot, 445 So.2d 1270 (La.App. 3d Cir.1984). See also Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3d Cir.1979), writ denied, 379 So.2d 1102 (La.1980).
The trial court accepted Tarver's testimony and determined that Protective Casualty withheld payment of benefits because it felt that Dupree had insurance which would cover the claim. Dupree did not have insurance which should have been known by Protective Casualty early on. It was quite clear that Paul Shaw, Inc. was plaintiff's statutory employer under the well-established jurisprudence existing at the time of the accident, and Paul Shaw, Inc. had agreed to provide compensation insurance for Dupree's employees. Adequate investigation would have shown that plaintiff was working on the Paul Shaw, Inc. job at the time of the accident. Under such circumstances, the trial court was not manifestly erroneous in finding Protective Casualty's refusal to pay arbitrary, capricious and without probable cause and plaintiff is entitled to recover penalties and attorney's fees under LSA-R.S. 23:1201 and 1201.2.
Appellants correctly assert that an insured employer such as Paul Shaw, Inc. should not be cast for attorney's fees. LSA-R.S. 23:1201.2; Fontenot v. Town of Kinder, supra. As amended in 1983, LSA-R.S. 23:1201 seems to allow penalties against an employer, even if insured. However, the statutory penalty is to be assessed against the employer or the insurer according to "fault." Clearly, the fault for failing to pay plaintiff's claim rests with the insurer who made the determination not to pay rather than with the employer who gave proper notice of the claim and was not involved in the decision not to pay plaintiff. Accordingly, the judgment will be amended to reflect that only Protective Casualty shall be liable for attorney's fees and penalties.

TRAVEL EXPENSES
Appellants argue that the trial court erred in awarding travel expenses to plaintiff who showed only that he made trips to the doctor and failed to establish how these trips were made and what expenses were involved.
The employer shall be liable for the actual expenses reasonably and necessarily incurred by an injured employee for mileage reasonably and necessarily travelled by the employee in order to obtain medical services. LSA-R.S. 23:1203. However, there must be evidence of the *1274 actual expenses incurred in order for the injured employee to recover travel expenses. Williams v. Commercial Union Assurance Co., 422 So.2d 657 (La.App. 3d Cir.1982); Romano v. Davis, 399 So.2d 1309 (La.App. 1st Cir.1976).
In Williams and Romano evidence was presented as to the number of trips made to the doctors and the approximate mileage but there was no evidence as to how the trips were made and the expenses occasioned thereby. Recovery for travel expenses were denied in both instances. In this case, plaintiff testified either he or his wife drove their car or his brother drove his own car to the doctor's office in Bossier City. If his brother drove, plaintiff would fill up his car with gas. Plaintiff also testified that it was 52 miles from his home to Bossier City. This is sufficient evidence of how the trips were made and the expenses incurred.

DURATION OF DISABILITY
Dr. Thomas A. Edwards, whose testimony was admitted by deposition, treated plaintiff for his leg injury from the time of the accident until August 15, 1985 at which time he advised plaintiff that he could go back to driving a truck as long as he did not climb up and down, do heavy manual labor or place too much stress on his leg. Dr. Edwards testified that he saw plaintiff again on September 30, 1985 at which time plaintiff told him that he had tried to work three days in August but was unable to because of pain in his foot. X-rays at that time revealed continued healing of the fracture but Dr. Edwards noted that the fracture was still not one hundred percent solid until he saw plaintiff again on November 11, 1985 at which time he released him to return to full activity. The trial court awarded benefits to plaintiff from the date of the accident through November 11,1985.
Appellants argue that Dr. Edwards released plaintiff to return to work on August 15,1985 and, therefore, the trial court erred in awarding benefits through November 11,1985. However, Dr. Edward's testimony clearly states that although he advised plaintiff to go back to work driving a truck but avoiding any activity stressful to his leg on August 15,1985, the fracture did not actually heal until November 11, 1985. The trial court was not clearly wrong in accepting Dr. Edward's testimony and plaintiff's testimony that plaintiff could not work because of the pain and awarding benefits from the date of the accident through November 11, 1985. The fact that plaintiff attempted to go back to work, but could not do so because of the pain in his leg, does not prevent him from receiving benefits until the time his fracture healed.

DECREE
The judgment of the district court is amended to delete the award of statutory penalties and attorney's fees against defendant Paul Shaw, Inc. and otherwise is affirmed, at appellants' costs.
AFFIRMED AS AMENDED.